# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF PUERTO RICO

| | | |
|---|---|---|
| JUAN CARLOS LOPEZ; CARLOS VILLEGAS;<br>HECTOR LUCIANO RODRIGUEZ; FRANCO<br>MONROUREAU; JUAN MIGUEL CAMARERO; JOEL<br>ALMESTICA; EFRAIN GARCIA; ANGEL RODRIGUEZ;<br>EDWIN BAEZ TORRES; ORLANDO ACETTY<br>BERMUDEZ; WILSON ABNEL TORRES RIVERA;<br>JUAN ALBERTO VARGAS; JOSE MORALES DIAZ;<br>LUIS ALBERTO AYALA DIAZ; | ) ) ) ) ) ) ) ) ) | |
| Plaintiffs, | ) ) | Case No: |
| v. | ) ) | |
| MANZANA, LLC.;<br>LAWRENCE WILLIAMS; | ) ) ) | |
| Defendants. | ) | |

## PLAINTIFFS' ORIGINAL COMPLAINT

### I. PRELIMINARY STATEMENT

1.      On or about August 2015, Defendants recruited Plaintiffs as part of an ongoing employment hiring campaign in Puerto Rico to harvest apples and orchard maintenance in and around Kent County, Michigan. Harvesting apples and orchard maintenance is labor intensive work performed during the apple harvest, typically in the fall.

2.      Although promising decent sanitary housing to plaintiffs as part of their recruitment scheme, Defendants housed Plaintiffs in decrepit filthy housing trailer units located in an agricultural migrant labor camp in Michigan, which failed to comply with state and federal health and safety requirements.

3.      Defendants provided false and misleading information to Plaintiffs at the time of recruitment in Puerto Rico regarding the terms and conditions of employment; intentionally violated without justification the terms of the working arrangement, failed to pay wages owed

when due, failed to provide and keep payroll records, and failed to inconspicuously post information required under the Migrant and Seasonal Agricultural Worker Protection Act.

4.      Defendants used ethnically derogatory language to address Plaintiffs, and made constant reference to their national origin to describe their work ability.

5.      Plaintiffs bring this action to obtain redress for Defendants' violations of Plaintiffs' rights during Plaintiffs' employment for Defendants during the 2015 agricultural season, arising under the Migrant and Seasonal Agricultural Worker Protection Act, 29 U.S.C. §§ 1801, *et seq.* ("AWPA"); Federal Law and Regulations under the H-2A Guestworker program; Michigan Workforce Opportunity Wage Act, Mich. Comp. Laws §§ 408.411, *et seq.* ("WOWA"); Bullard-Plawecki Employee Right to Know Act, Mich. Comp. Laws §§ 423.501 *et seq.* ("ERKA"), Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C.A. § 2000e-2 and the Elliott-Larsen Civil Rights Act ("Elliott-Larsen"), Mich. Comp. Laws § 37.2202(1)(a).

## II. JURISDICTION AND VENUE

6.      This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1337 in that this action arises from federal claims under AWPA 29 U.S.C. § 1854(a) and 42 U.S.C.A. § 2000e-2.

7.      This Court has supplemental jurisdiction over the related state claims pursuant to 28 U.S.C. § 1367, because the state claims are so related to the federal claims that they form part of the same case or controversy.

8.      Venue is proper in this district pursuant to 28 U.S.C. § 1391(b), because a substantial part of the events or omissions giving rise to these claims occurred in this district.

9.      Venue is also proper pursuant to AWPA 29 U.S.C. § 1854(a).

## III. PARTIES

**Plaintiffs**

10.     Each of the fourteen Plaintiffs—JUAN ALBERTO VARGAS, ORLANDO ACETTY BERMUDEZ, JOEL ALMESTICA, LUIS ALBERTO AYALA DIAZ, EDWIN BAEZ TORRES, JUAN CARLOS LOPEZ, EFRAIN GARCIA, HECTOR LUCIANO RODRIGUEZ, JUAN MIGUEL CAMARERO, FRANCO MONROUREAU, JOSE MORALES DIAZ, ANGEL RODRIGUEZ, WILSON ABNEL TORRES RIVERA, and CARLOS VILLEGAS (hereinafter "Plaintiffs")—is a natural person who, at all relevant times, maintained his permanent residence outside of Michigan.

11.     Each Plaintiff, with the exception of Plaintiff JUAN CARLOS LOPEZ, currently and at all relevant times maintains his permanent residence in Puerto Rico.

12.     Each Plaintiff only reads Spanish and has limited English proficiency in verbal communication.

13.     Each Plaintiff was an "employee" of Defendants MANZANA and LAWRENCE WILLIAMS in 2015 within the meaning of AWPA 29 U.S.C. § 1802(5), ERKA § 423.501(2)(a), and WOWA Mich. Comp. Laws §§ 408.411, et seq.

**Defendants**

14.     Defendant MANZANA, LLC (hereinafter "MANZANA") is a Michigan corporation. Its principal place of business is in Kent County, Michigan.

15.     Defendant MANZANA recruits and provides labor to agricultural employers in Michigan.

16.     Defendant MANZANA recruits workers outside of Michigan, including in Puerto Rico.

17.     Defendant MANZANA was an "employer" within the meaning of 42 U.S.C.A. § 2000e and Mich. Comp. Laws § 37.2201 at all times. All of the actions and omissions of Defendants were undertaken by Defendants either directly and/or through their agents.

18.     Defendants knew, or should have known, of the policies, practices, acts, and conditions alleged.

19.     Defendant MANZANA supervises its workers on farms throughout Michigan, including farms in Kent County.

20.     Defendant LAWRENCE WILLIAMS is a natural person residing in Kent County, Michigan.

21.     Defendant LAWRENCE WILLIAMS is the principal and registered agent of the corporate Defendant MANZANA.

22.     At all times relevant, and in all Defendant LAWRENCE WILLIAMS's actions and omissions set forth herein, Defendant LAWRENCE WILLIAMS acted as an agent for the corporate Defendant MANZANA.

23.     At all relevant times, Defendant LAWRENCE WILLIAMS was acting in the interest of Defendant MANZANA.

24.     At all relevant times, Defendant MANZANA benefitted from the acts and services provided by Defendant LAWRENCE WILLIAMS.

25.     Upon information and belief, Defendant LAWRENCE WILLIAMS hired Marcelo and Martin to supervise Defendant MANZANA's employees, including the Plaintiffs.

26.     At all times relevant, and in all Marcelo's and Martin's actions and omissions set forth herein, Marcelo and Martin acted as agents for the Defendants.

## IV. GENERAL FACT ALLEGATIONS

**Recruitment**

27.     A federal statute, known commonly as the "H-2A Program" allows agricultural employers in the United States to hire foreign workers ("Guest Workers") to perform farm work on a temporary basis when an insufficient number of U.S. workers are available. 8 U.S.C. § 1101 *et seq.*

28.     The H-2A Program requires that visas may not be issued for the foreign temporary workers until the employer has applied to the U.S. Department of Labor ( hereinafter, "USDOL") for a certification that (a) there are not sufficient U.S. workers who are able, willing, qualified, and available to perform work at the place and time needed, and (b) the wages and working conditions of workers in the United States similarly employed will not be "adversely affected" by the importation of H-2A workers. 8 U.S.C. §1188(a) (1).

29.     On or around June 4, 2015, Defendants prepared and submitted to the USDOL agricultural clearance orders to meet the H-2A certification requirement, pursuant to 8 U.S.C. §1101(a)(15)(H)(ii)(a).

30.     The clearance order is a job offer that contains the terms and conditions of employment and is used by the Employment Service System and its related state agencies, including the Puerto Rico Department of Labor, to recruit and refer job applicants. 20 C.F.R. §655.104.

31.     In accordance with federal statutes and regulations governing the H-2A Program certification process, Defendants agreed to comply with all federal, state, and local employment-related laws and regulations.

32.     Defendants received from the USDOL a certification to employ temporarily up to 235 Guest Workers to perform apple harvesting and orchard maintenance for Defendant MANZANA in Kent County, Michigan. The USDOL certification was for August, 15, 2015, through November 5, 2015 (the "Contract Period").

33.     A copy of Defendants' approved Clearance Order No. 5928648, Form ETA 790 and attachments is annexed to this Complaint as Exhibit 1 (hereinafter, "Manzana Clearance Order").

34.     In accordance with federal regulations governing the H-2A Program certification process, Defendants were required, *inter alia*, to engage in the active recruitment of U.S. domestic workers for the positions for which the certification was sought and offer to qualified U.S. domestic workers' wages and benefits comparable to those contained in the job offers made to H-2A workers under the terms of the labor certification.

35.     In accordance with federal regulations and statutes governing the H-2A program certification, once the USDOL approves a clearance order, the clearance order is transmitted to the State Workforce Agencies (hereinafter, "SWA") around the United States for recruitment.

36.     The Michigan Foreign Labor Certification Office and the United States Office of Foreign Labor Certification approved Defendant MANZANA's Clearance Order and transmitted it among other SWAs, including the Puerto Rico Department of Labor ("PRDOL"), for recruitment of U.S. domestic workers for Defendant MANZANA.

37.     PRDOL agreed to recruit migrant agricultural workers for Defendant MANZANA.

38.     Defendant MANZANA knew or should have known that PRDOL was recruiting migrant agricultural workers for Defendant.

39.    Plaintiffs contacted PRDOL for opportunities to work in agriculture. PRDOL provided Plaintiffs with information about an employment opportunity with Defendant MANZANA and told Plaintiffs about the terms and conditions contained in the Manzana Clearance Order.

40.    Shortly thereafter, Defendant LAWRENCE WILLIAMS interviewed each Plaintiff over the phone.

41.    During the interview, Defendant LAWRENCE WILLIAMS reviewed information with the Plaintiffs from the Manzana Clearance Order.

42.    Specifically, Defendant LAWRENCE WILLIAMS, over the phone or through the Manzana Clearance Order, told Plaintiffs that:

    A.  The job would entail harvesting apples;

    B.  No previous experience was necessary;

    C.  New employees would receive a six-hour on-the-job training;

    D.  The job would last from August 15, 2015, to November 5, 2015;

    E.  The hourly wage would be $11.56 per hour;

    F.  The job would entail at least 36 hours of work per workweek;

    G.  Inbound and outbound transportation expenses would be provided by Defendant MANZANA;

    H.  Costs for inbound transportation and sustenance for travel from Puerto Rico to the place of employment would be reimbursed during the first week of work; and

    I.  Free housing and utilities would be guaranteed.

43.    Each Plaintiff was residing in Puerto Rico at the time of the interview with Defendant LAWRENCE WILLIAMS.

44.     Defendants MANZANA and LAWRENCE WILLIAMS directly and by their agents made these representations to Plaintiffs at the time of recruitment while Plaintiffs were in Puerto Rico.

45.     Shortly thereafter Defendant LAWRENCE WILLIAMS extended offers of employment at Manzana via the phone to each Plaintiff for the Contract Period, which Plaintiffs accepted.

46.     Defendants MANZANA and LAWRENCE WILLIAMS expressly and implicitly promised that the proffered employment would comply with all terms and conditions of the Clearance Order.

**Employment**

47.     Plaintiffs CARLOS VILLEGAS, FRANCO MONROUREAU, and WILSON TORRES RIVERA (hereinafter "First Migrant Worker Group) started work for Defendant MANZANA on or about August 15, 2015.

48.     Defendant LAWRENCE WILLIAMS contacted Oscar Sanchez from the State of Michigan Workforce Development Agency ("WDA") to assist the First Migrant Worker Group in finding new jobs at a different employer nearby.

49.     Before paying the First Migrant Worker Group for any work or travel expenses, Defendant LAWRENCE WILLIAMS required the First Migrant Worker Group to sign "voluntary quit" forms.

50.     The First Migrant Worker Group felt coerced to leave their employment on or around August 21, 2015.

51.     EDWIN BAEZ DIAZ, ORLANDO ACETTY BERMUDEZ, JUAN MIGUEL CAMARERO, JUAN CARLOS LOPEZ, JOSE MORALES DIAZ, and LUIS AYALA

(hereinafter, "the Second Migrant Worker Group") arrived in Michigan to work for Defendant MANZANA on or around August 21, 2015.

52.    On or around August 21, 2015, Defendant LAWRENCE WILLIAMS contacted Oscar Sanchez from the State of Michigan Workforce Development Agency ("WDA") to assist the Second Migrant Worker Group to other employment at a nearby employer.

53.    The Second Migrant Worker Group never received reimbursement for travel.

54.    On or about August 22, 2015, Plaintiffs JUAN VARGAS, HECTOR LUCIANO RODRIGUEZ, ANGEL RODRIGUEZ, JOEL ALMESTICA, and EFRAIN GARCIA (hereinafter "the Third Migrant Worker Group) arrived in Michigan.

55.    On or around August 23, 2015, the Third Migrant Worker Group started work for Defendant MANZANA.

56.    On or about August 27, 2015, Defendant LAWRENCE WILLIAMS again called Oscar Sanchez from the State of Michigan Workforce Development Agency ("WDA") to help the Third Migrant Worker Group find new jobs at a different employer nearby.

57.    Defendant LAWRENCE WILLIAMS also required the Third Migrant Worker Group to sign a "voluntary quit" form before receiving their final wage payment.

58.    Defendant LAWRENCE WILLIAMS told the Third Migrant Worker Group that anyone who did not sign the form would be unable to work in agricultural jobs in Michigan for two years.

## V. CLAIMS FOR RELIEF

### COUNT I:
### MIGRANT AND SEASONAL AGRICULTURAL WORKER PROTECTION ACT
#### (Against All Defendants)

59.    Plaintiffs reincorporate and allege each of the foregoing paragraphs of this Complaint as if fully set forth herein.

60.    Each Defendant is a "person" within the meaning of 29 U.S.C. § 1802(9).

61.    Each of the fourteen Plaintiffs is a "migrant agricultural worker" within the meaning of AWPA 29 U.S.C. § 1802(8).

62.    Defendant MANZANA is an "agricultural employer" within the meaning of 29 U.S.C. § 1802(2). In the alternative, Defendant MANZANA is a "farm labor contractor" within the meaning of 29 U.S.C. §1802(7).

63.    Defendant LAWRENCE WILLIAMS is an "agricultural employer" within the meaning of 29 U.S.C. § 1802(2). In the alternative, Defendant LAWRENCE WILLIAMS is a "farm labor contractor" within the meaning of 29 U.S.C. §1802(7).

64.    Defendant MANZANA and Defendant LAWRENCE WILLIAMS managed the labor and product harvested at the farms listed on the Manzana Clearance Order.

65.    Defendant MANZANA and Defendant LAWRENCE WILLIAMS, solicited, recruited, hired, employed, and housed Plaintiffs to work in apple harvesting and orchard maintenance.

66.    Upon information and belief, Defendant MANZANA and Defendant LAWRENCE WILLIAMS were compensated for soliciting, recruiting, hiring, employing, transporting, or housing of agricultural laborers.

67.     Upon information and belief, Defendant MANZANA contracted with local farms to provide their labor.

68.     During the 2015 Michigan apple season, Defendant LAWRENCE WILLIAMS was registered with the USDOL to solicit, hire, and recruit agricultural laborers.

**Recruitment and Working Arrangement**

69.     The Manzana Clearance Order constituted a working arrangement between each Plaintiff and Defendants MANZANA and LAWRENCE WILLIAMS.

70.     Each Plaintiff was in Puerto Rico at the time of recruitment.

71.     Defendants MANZANA and LAWRENCE WILLIAMS failed to pay each Plaintiff the promised inbound travel reimbursement within the first week.

72.     Defendants MANZANA and LAWRENCE WILLIAMS failed to provide a minimum of 36 hours of work per week for the Plaintiffs.

73.     Defendant MANZANA and LAWRENCE WILLIAMS failed to provide on-site job training and a job orientation regarding workplace rules, policies, and safety sanitation for the Second Migrant Worker Group.

74.     Defendants MANZANA and LAWRENCE WILLIAMS violated, without justification, the terms of the working arrangement.

75.     Each Plaintiff experienced different work conditions and terms than described by Defendant LAWRENCE WILLIAMS and described in the Manzana Clearance Order.

76.     Defendants MANZANA and LAWRENCE WILLIAMS implemented a production standard that was not disclosed at the time of recruitment.

**Wages**

77.     On or around August 25, 2015, Defendant LAWRENCE WILLIAMS paid the

First Migrant Worker Group around $700 on one check to be divided among the four workers.

78.     Each Plaintiff in the First Migrant Worker Group performed 52 hours of work

during pay period ending August 21, 2015.

79.     Upon information and belief, Defendant LAWRENCE WILLIAMS intended the

$700 to be for the labor and the $175 each to be for transportation and reasonable sustenance

from the place from which the Plaintiff departed.

80.     The Third Migrant Worker Group worked 22.5 hours during pay period ending in

August 27, 2015.

81.     Upon information and belief, Defendants MANZANA and LAWRENCE

WILLIAMS paid the Third Migrant Worker Group in cash for 21 hours of work on or around

August 27, 2015.

82.     Upon information and belief, Defendant LAWRENCE WILLIAMS paid each

member of the Third Migrant Worker Group $240 in cash for 21 hours of work.

83.     Upon information and belief, members of the Third Migrant Work Group spent,

on average, $412 in travel and reasonable travel subsistence expenses coming to work for

Defendant MANZANA in Michigan.

84.     Upon information and belief, Defendant MANZANA reimbursed the Second

Migrant Worker Group $270 for travel and reasonable travel subsistence expenses on or around

August 27, 2015.

85.    Defendants MANZANA and LAWRENCE WILLIAMS failed to fully compensate each Plaintiff for transportation costs and reasonable sustenance from Puerto Rico to Michigan.

86.    Defendants did not compensate Plaintiffs for all time performing orchard maintenance and apple harvesting.

87.    Defendants did not provide any wage statements to the Third Migrant Worker Group.

88.    Defendants failed to provide wage statements to each Plaintiff that accurately reflect the basis the worker was were paid, the number of piecework units earned, and other required information related to each pay period.

89.    Upon information and belief, Defendants did not maintain an accurate record of the hours any of the Plaintiffs worked.

90.    Defendants paid wages to the Third Migrant Worker Group in cash.

91.    Defendants MANZANA and LAWRENCE WILLIAMS failed to pay Plaintiffs the promised wage for all hours worked.

**Transportation to Michigan and Transportation Costs**

92.    Upon information and belief, Plaintiffs each paid, on average, $324 for their own airfare from Puerto Rico to Michigan and incurred between $50-60 for food costs during the trip.

93.    Each Plaintiff in the First Migrant Worker Group received $175 each for transportation costs and reasonable sustenance from the place from which the Plaintiff departed on or around August 25, 2015.

94.    Defendants did not give any reimbursement of the Second Migrant Worker Group's transportation costs and reasonable sustenance costs during their trip from Puerto Rico to Michigan.

95.    Upon information and belief, Defendants reimbursed the Third Migrant Worker Group of Plaintiffs a total of $270 each for their transportation and daily subsistence costs.

**Housing**

96.    Defendants arranged housing in Michigan for Plaintiffs.

97.    During the 2015 Michigan apple harvest season, Defendant MANZANA utilized housing at a migrant labor camp called Braman No. 2 Montcalm Rd (hereinafter "Braman Labor Camp") owned by Ronald Rasch Farms, LLC.

98.    Upon information and belief, Ronald Rasch Farms, LLC permitted Defendant MANZANA to house migrant workers at the Braman Labor Camp for the 2015 apple harvest season.

99.    At all times relevant to this action, the Braman Labor Camp constituted an "agricultural labor camp" within the meaning of the Michigan Public Health Code, Mich. Comp. Laws §§ 333.12401, *et seq.* and its attendant regulations, Mich. Admin. Code R. 325.3601.

100.    Defendant LAWRENCE WILLIAMS, directly or by an agent, assigned Plaintiffs to housing at the Braman Labor Camp once they arrived in Michigan.

101.    Nine Plaintiffs—CARLOS VILLEGAS, FRANCO MONROUREAU, GABRIEL COTTO, WILSON TORRES RIVERA, JUAN VARGAS, HECTOR LUCIANO RODRIGUEZ, JOEL ALMESTICA, and EFRAIN GARCIA—were housed in one unit at the Braman Camp during August 2015.

102.    Per Michigan Department of Agricultural and Rural Development (hereinafter, "MDARD") reports  during the fall of 2015,None of the units at the Braman Labor Camp was permitted to have more than 7 people staying in a single unit.

103.    Upon information and belief, Defendants paid the application fee for the Braman Labor Camp to be licensed in 2015.

104.    Upon information and belief, Defendants were responsible for the Braman Labor Camp's utilities, maintenance, and repairs during the apple harvest season in 2015.

105.    At all times relevant, the Braman Labor Camp failed to meet the minimum health and safety standards specified under the Michigan Occupational Safety and Health Act ("MIOSH Act"), Mich. Comp. Laws §408.1014, *et. seq*. state and the corresponding federal Occupational Safety and Health law, in that conditions included, *inter alia*:

    A.  Inadequate cooking, refrigeration, food storage, and food preparation facilities;

    B.  Overcrowding;

    C.  Insufficient number of beds;

    D.  Unsanitary conditions of the mattresses; and

    E.  Failure to maintain the sanitary condition of toilet rooms.

106.    MDARD issued Migrant Labor Housing License Inspection Reports regarding the Braman Camp in 2015, which listed certain housing deficiencies before and during occupancy in 2015.

107.    Defendants failed to correct deficiencies at the Braman Labor Camp noted in 2015 Migrant Labor Housing License Inspection Reports prior to housing Plaintiffs in 2015.

**General**

108.    Defendants MANZANA and LAWRENCE WILLIAMS did not post a notice explaining Plaintiffs' rights under the AWPA in a conspicuous place where Plaintiffs were able to readily observe a copy.

109.    Individual Plaintiffs complained to agents of Defendant MANZANA, including Defendant LAWRENCE WILLIAMS and supervisors Marcelo and Martin, about the substandard living and working conditions during the 2015 apple harvest season.

110.    Defendants MANZANA and LAWRENCE WILLIAMS, jointly and separately, intentionally violated the AWPA and its attendant regulations by committing the following acts or omissions, *inter alia*:

A.    Failing to disclose in writing the relevant terms and conditions of employment at the time each Plaintiff was recruited, in violation of 29 U.S.C. § 1821(a).

B.    Failing to post in a conspicuous place the rights and protections afforded seasonal and migrant workers under AWPA, in violation of 29 U.S.C. § 1821(b).

C.    Failing to make, keep, and preserve required payroll records for each Plaintiff, in violation of 29 U.S.C. § 1821(d)(1).

D.    Failing to provide each Plaintiff with a written statement each pay period with the required information to be disclosed under AWPA, in violation of 29 U.S.C. § 1821(d)(2).

E.    Knowingly providing false or misleading information to Plaintiffs concerning the terms, conditions, and existence of employment, in violation of 29 U.S.C. § 1821(f).

F.    Failing to pay each Plaintiff wages when due, in violation of 29 U.S.C. § 1822(a).

G.     Violating, without justification, the working arrangements with Plaintiffs, in violation of 29 U.S.C. § 1822(c), by:

i.     Failing to pay each Plaintiff during the first week of work the promised travel reimbursement;

ii.     Failing to provide housing in compliance with state and federal law;

iii.     Failing to pay the promised wages;

iv.     Failing to pay wages timely and maintain and furnish records under the Payment of Wages and Fringe Benefits Act, Mich. Comp. Laws §§408.471, *et. seq.*;

v.     Failing to employ any Plaintiffs for the Contract Period;

vi.     Failing to comply with all applicable employment-related and health and safety laws, including the FLSA, WOWA, and MIOSH Act.

111.     Defendants intentionally violated the Plaintiffs' housing rights under the AWPA by failing to ensure the housing provided to Plaintiffs complied with applicable substantive federal and state health and safety standards, in violation of 29 U.S.C. § 1823(a).

112.     The violations of the AWPA and its attendant regulations as set forth in this count were the natural consequences of the conscious and deliberate actions of Defendants and were intentional within the meaning of the AWPA.

113.     The violations of the AWPA and its attendant regulations as set forth in this count occurred as part of the normal business practices of Defendants MANZANA and LAWRENCE WILLIAMS.

114.     As a direct consequence of Defendants' violations of Plaintiffs' rights under the AWPA, each Plaintiff suffered harm.

115.     Defendants are jointly and severally liable for each violation of the AWPA as set forth in this count, to each Plaintiff or the greater between his or her actual damages or up to $500.00 in statutory damages per violation, pursuant to 29 U.S.C. § 1854.

**COUNT II:**
**VIOLATION OF WORKING ARRANGEMENT OF AWPA REGARDING**
**CORRESPONDING EMPLOYMENT FOR TEMPORARY AGRICULTURAL WORK**
**(Against Defendants MANZANA and LAWRENCE WILLIAMS)**

116.     Plaintiffs reincorporate and allege each of the foregoing paragraphs of this Complaint as if fully set forth herein.

117.     Pursuant to 8 U.S.C. § 1188(a) (1), any employer seeking temporary H-2A visas for foreign agricultural labor must engage in positive recruitment efforts of U.S. workers and offer equivalent wages and working conditions so that the employment of any aliens will not adversely affect U.S. workers similarly employed.

118.     Furthermore, pursuant to 8 U.S.C. §1188(c)(3)(B), any employer must provide such U.S. workers with benefits, wages and working conditions as required by the regulations. Pursuant to this explicit authority conferred by 8 U.S.C. § 1188, the Secretary of Labor has promulgated 20 C.F.R. §§ 655.102 and 655.103. In particular, employers are required to:

A.  pay wages on the regular pay day pursuant to 20 C.F.R. § 655.102(b)(10);

B.  keep accurate and adequate records with respect to the workers earnings pursuant to 20 C.F.R. § 655.102(b)(7);

C.  furnish a pay statement to each worker on or before a payday pursuant to 20 C.F.R. § 655.102(b)(8);

D.  provide housing that shall meet both federal and state Occupational Safety and Health Administration ("OSHA") standards pursuant to 20 C.F.R. §655.102(a)(1)(i); and

E.  specify productivity standards, if any, in the job order pursuant to 20 C.F.R. §

655.102 (b)(9)(B)(1);

119.    Defendants violated 8 U.S.C. § 1188(a)(1) by refusing to pay Plaintiffs, who are

U.S. workers, equivalent wages.

120.    Defendants violated 8 U.S.C. § 1188(c)(3)(B) and 20 C.F.R. §§ 655.102 and

655.103 when they failed to pay Plaintiffs individually for work performed with an individual

pay statement provided to each worker.

121.    Defendants failed to provide housing that met federal and state OSHA standards

by not providing them adequate living space and providing clean toilet facilities pursuant to

Michigan and Federal OSHA regulations.

122.    Defendants wrongfully instituted a productivity standard when no such standard

was listed in the job order.

123.    As a result, Plaintiffs have suffered damages.

## COUNT III:
## MICHIGAN WORKFORCE OPPORTUNITY WAGE ACT
### (Against Defendants Manzana and Lawrence Williams)

124.    At all times relevant, all Plaintiffs were employees within the meaning of the

Mich. Comp. Laws § 408.412.

125.    Defendants failed to pay the Plaintiffs—CARLOS VILLEGAS, FRANCO

MONROUZEAU, and WILSON TORRES RIVERA— at least the Michigan minimum wage of

eight dollars and fifteen cents ($8.15) for every compensable hour worked for Defendants when

it was due, in violation of Mich. Comp. Laws § 408.413 and 408.414.

126.    The First Migrant Worker Group worked 52 hours during the week of August 15, 2015 and received $175 per Plaintiff, which is less than the wage guaranteed under the Michigan minimum wage (8.15 x 52 = $423.80).

127.    These three Plaintiffs are entitled to their unpaid minimum wages, plus an additional equal amount in liquidated damages, together with court costs and reasonable attorneys' fees, as provided in Mich. Comp. Laws § 408.419(1).

**COUNT IV:**
**BULLARD-PLAWECKI EMPLOYEE RIGHT TO KNOW ACT**
**(Against Defendants MANZANA and LAWRENCE WILLIAMS)**

128.    Plaintiffs reincorporate and allege each of the foregoing paragraphs of this Complaint as if fully set forth herein.

129.    At all times relevant to this action, Defendant MANZANA was an "employer" within the meaning of Mich. Comp. Laws § 423.501(b).

130.    At all times relevant to this action, Defendant LAWRENCE WILLIAMS was an "employer" within the meaning of Mich. Comp. Laws § 423.501(b).

131.    On November 10, 2015, Plaintiffs, through their attorney, provided Defendants MANZANA and LAWRENCE WILLIAMS a written request for access to personnel files for all fourteen Plaintiffs, pursuant to Mich. Comp. Laws § 421.501, *et. seq*.

132.    Plaintiffs, through their attorney, sent the letter to Defendant MANZANA's address listed on the U.S. Department of Labor Foreign Labor Certification Registry List. The letter was returned by the U.S. postal Service shortly thereafter as undeliverable.

133.    Defendants have willfully and knowingly failed to timely provide the requested personnel files on behalf of the Plaintiffs, in violation of Mich. Comp. Laws § 421.501, *et. seq*.

**COUNT V:**
**DISCRIMINATION ON THE BASIS OF NATIONAL ORIGIN IN VIOLATION OF**
**TITLE VII OF THE CIVIL RIGHTS ACT OF 1964**
**(Against Defendants MANZANA and LAWRENCE WILLIAMS)**

134.    Plaintiffs reincorporate and allege each of the foregoing paragraphs of this Complaint as if fully set forth herein.

135.    Defendants MANZANA and LAWRENCE WILLIAMS intentionally discriminated against Plaintiffs on account of their national origin in violation of Title VII.

136.    Plaintiffs were told that their perceived low level of work production was because they were Puerto Rican, in contrast with the other existing workers of Mexican origin.

137.    Defendant LAWRENCE WILLIAMS' agent Marcelo, upon information and belief, asked Plaintiffs the day they all arrived why they came to work at MANZANA since that particular job "was for Mexicans."

138.    On August 21, 2015, Marcelo told the Second Migrant Worker Group on the day that they arrived in Michigan that a prior group, who had just arrived from Puerto Rico, was leaving that same day because of their work performance.

139.    Marcelo told all the Plaintiffs as they arrived from the airport that they were too well-dressed to be farmworkers.  He told the First Migrant Worker Group that their levels of education were too high and their shoes were too nice to be picking apples.  Marcelo asked all Plaintiffs why they were there, to which Plaintiffs responded because they wanted to work.

140.    Defendant LAWRENCE WILLIAMS told the First Migrant Worker Group, "I bet you a *refresco* (soft drink) that you can't catch up to my Mexicans."

141.    On the first day of harvesting apples, Defendant LAWRENCE WILLIAMS told the First Migrant Worker Group that they wouldn't work out well at Manzana.

142.    Defendant LAWRENCE WILLIAMS told the Third Migrant Worker Group that, "all they send me here is meat for these sharks," comparing the Puerto Rican workers with the other agricultural seasonal workers of Mexican descent.

143.    When the Third Migrant Worker Group asked Defendant LAWRENCE WILLIAMS if they could shadow the Mexican guest workers, they were denied the opportunity by Defendant LAWRENCE WILLIAMS and told that they would only "slow the Mexicans down."  Defendant LAWRENCE WILLIAMS told Plaintiffs that the Mexicans were "machines" and "tigers," and that the Puerto Rican workers were "kittens" compared to them.

144.    Defendant LAWRENCE WILLIAMS told the Third Migrant Worker Group on their second day of work that, "this is not going to work," and for Plaintiffs to save their money for their return trip to Puerto Rico.

145.    As a result of Defendants' unlawful conduct, Plaintiffs suffered emotional harm.

146.    As a result of Defendants' unlawful conduct, Defendant is liable to Plaintiffs for punitive damages under Title VII.

## COUNT VI:
## DISCRIMINATION ON THE BASIS OF NATIONAL ORIGIN IN VIOLATION OF MICHIGAN'S ELLIOTT-LARSEN CIVIL RIGHTS ACT
### (Against Defendants MANZANA and LAWRENCE WILLIAMS)

147.    Plaintiffs incorporate by reference all allegations in all preceding paragraphs, but particularly paragraphs 135 – 144, as if fully set forth herein.

148.    Defendants MANZANA and LAWRENCE WILLIAMS intentionally discriminated against Plaintiffs on account of their national origin violation of Elliott-Larsen.

149.    As a result of Defendants' unlawful conduct, Plaintiffs suffered emotional harm.

150.    As a result of Defendants' unlawful conduct, Defendant is liable to Plaintiffs for punitive damages under Elliott-Larsen.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that this Court grant the following relief against Defendants, jointly and severally, as follows:

A.  Declare that all Defendants intentionally violated the AWPA and its attendant regulations as set forth in Count I;

B.  Grant declaratory relief pursuant to 28 U.S.C. §§ 2201 and 2202 and Fed. R. Civ. P. 57;

C.  A permanent injunction enjoining Defendants from unlawfully terminating or failing to hire U.S. workers and replacing those U.S. workers with Guest Workers, in violation of the statutory and regulatory provisions of the H-2A Program;

D.  Grant judgment in favor of Plaintiffs and against all Defendants on the AWPA claims and its attendant regulations as set forth in Count I;

E.  Award each Plaintiff the maximum statutory damages available for each violation of a provision of AWPA. If any Plaintiff proves actual damages greater than the maximum for a violation of AWPA, award said Plaintiff his or her actual damages for said violation;

F.  Grant judgment in favor of Plaintiffs and against Defendants MANZANA and LAWRENCE WILLIAMS on Plaintiffs' Violation of Federal Law and Regulation claims as set forth in Count II;

G.  Grant judgment in favor of Plaintiffs and against Defendants MANZANA and LAWRENCE WILLIAMS on Plaintiffs' WOWA claims as set forth in Count III;

H.  Grant judgment in favor of Plaintiffs and against Defendants MANZANA and LAWRENCE WILLIAMS on Plaintiffs' Violation of Federal Law and Regulation claims as set forth in Count II;

I.  Award each Plaintiff the amount of his or her unpaid minimum wages for each workweek in which he or she was not paid at least the minimum wage, pursuant to 29 U.S.C. § 216(b) and WOWA, Mich. Comp. Laws § 408.419;

J.  Award each Plaintiff an amount equal to his or her unpaid wages for each workweek in which he or she was not paid at least the minimum wages owed when due as liquidated damages, pursuant to 29 U.S.C. § 216(b) and WOWA Mich. Comp. Laws § 408.419;

K.  Award Plaintiffs just damages for unlawful discrimination under 42 U.S.C.A. § 2000e-2 and Mich. Comp. Laws  § 37.2202(1)(a);

L.  Declare that Defendants willfully and knowingly violated the Employee Right to Know Act as set forth in Count IV, and award each Plaintiff statutory damages of two hundred dollars ($200), constituting a total aggregate of at least $2,800, plus actual damages, costs, and attorney's fees pursuant to ERKA § 423.511.

M.  Award Plaintiffs their reasonable attorney's fees as provided by the WOWA and ERKA; and

N.  Award Plaintiffs costs and any other relief as this Court deems just and proper.

Respectfully submitted,

Dated: <u>February 2, 2017 </u>                    <u>/s/ Lourdes Robles          </u>
                                               Lourdes Robles
                                               Volunteer Attorney
                                               LatinoJustice PRLDEF

99 Hudson Street
14th Street
New York, NY 10013
Tel. (212) 739-7510
lrobles@latinojustice.org


Natasha Lycia Ora Bannan
*Pro hac vice* (motion pending)
LatinoJustice PRLDEF
99 Hudson Street
14th Street
New York, NY 10013
Tel. (212) 739-7539
nbannan@latinojustice.org

Scott J. Boyer (P80737)
*Pro hac vice* (motion pending)
FARMWORKER LEGAL SERVICES,
a division of Michigan Advocacy Program
3030 South 9th Street, Suite 1A
Kalamazoo, MI 49009
Tel. (269) 492-7190 / Fax (269) 492-7198
sboyer@farmworkerlaw.org


ATTORNEY FOR PLAINTIFFS