UNITED STATES DISTRICT COURT
DISTRICT OF PUERTO RICO

| | |
|---|---|
| JUAN CARLOS LOPEZ, CARLOS VILLEGAS, HECTOR LUCIANO RODRIGUEZ, FRANCO MONROUREAU, JUAN MIGUEL CAMARERO, JOEL ALMESTICA, EFRAIN GARCIA, ANGEL RODRIGUEZ, EDWIN BAEZ-TORRES, ORLANDO ACETTY-BERMUDEZ, WILSON TORRES RIVERA, JUAN ALBERTO VARGAS, JOSE MORALES-DIAZ, LUIS ALBERTO AYALA-DIAZ, and BETHZAIDA SIERRA GONZALEZ, as Successor-in-Interest of the Estate of GABRIEL COTTO, <br><br> Plaintiffs, <br><br> v. <br><br> MANZANA LLC, LAWRENCE WILLIAMS, and RONALD RASCH FARMS, LLC, <br><br> Defendants. | CIVIL ACTION <br> NO. 3:17-01154-WGY |

YOUNG, D.J.[1]   July 25, 2018

**MEMORANDUM AND ORDER**

## I. INTRODUCTION

The Plaintiffs, a group of migrant agricultural workers from Puerto Rico, allege violations of the Migrant and Seasonal Agricultural Worker Protection Act ("AWPA"), discrimination on

---

[1] Of the District of Massachusetts, sitting by designation.

[1]

the basis of national origin, and breach of contract against the Defendants Manzana LLC ("Manzana"), Manzana's owner Lawrence Williams ("Williams"), and Ronald Rasch Farms, LLC ("Rasch Farms"). Rasch Farms moves for dismissal based on lack of personal jurisdiction. For the following reasons, the Court GRANTS Rasch Farms's motion.

### A. Procedural History

On February 2, 2017, the Plaintiffs filed their initial complaint against Manzana and Williams, alleging violations of the AWPA, Michigan wage and employment laws, and federal and state discrimination laws. See Compl. ¶¶ 59-150, ECF No. 1. They later filed an amended complaint on June 9, 2017, adding Rasch Farms as a defendant, removing the wage and employment claims, and adding two breach of contract claims.[2] Am. Compl. ¶¶ 127-185, ECF No. 15.

On July 17, 2017, Rasch Farms filed a motion to dismiss for lack of personal jurisdiction, or alternatively, to change venue. Def.'s Mot. Dismiss ("Def.'s Mot."), ECF No. 22. The Plaintiffs opposed the motion. Pls.' Mem. Opp'n Mot. Dismiss ("Pls.' Opp'n"), ECF No. 26. This Court heard oral argument on

---

[2] The Plaintiffs have since voluntarily dismissed their federal discrimination claim. See ECF No. 38.

the motion on April 19, 2018, and took the matter under advisement.[3]

B. **Facts Alleged**

Federal law allows agricultural employers in the United States to apply for visas and hire temporary foreign workers when the number of available local workers is insufficient to meet demand. Am. Compl. ¶ 41. This program, commonly known as the "H-2A Program," requires employers first to apply to the United States Department of Labor ("USDOL") for a certification. Id. at ¶ 42. To qualify for certification, the employer must submit a clearance order detailing the terms and conditions of the potential employment. Id. at ¶ 43. This clearance order is forwarded through an interstate system to local employment agencies around the United States (including Puerto Rico) in order to recruit and refer qualified workers. Id. at ¶¶ 42-43. Employers who wish to recruit workers through the H-2A Program must comply with certain regulations concerning wages, housing, and recordkeeping. Id. at ¶ 45.

The Plaintiffs allege that Rasch Farms, an owner and operator of apple orchards in Michigan, "utilized" Manzana as a farm labor contractor and "compensated [Manzana] to perform farm labor activities." Id. at ¶¶ 33, 35-37. In June 2015, Manzana

---

[3] The Court also heard argument on Manzana's and Williams's motion for change of venue, which it denied. See ECF No. 39.

prepared and submitted an agricultural clearance order to meet the H-2A certification requirement. Id. at ¶ 46; Ex. 1. The clearance order was then transmitted to local agencies around the country, including the Puerto Rico Department of Labor ("PRDOL"), for the recruitment of domestic workers. Id. at ¶ 47. Rasch Farms provided Manzana with the address of its worksites and housing to be included on the clearance order. Id. at ¶ 48. Manzana then recruited workers in accordance with the H-2A Program rules and regulations. Id. at ¶ 53. The Plaintiffs, who were all permanent residents of Puerto Rico at the time, contacted the PRDOL in July and August 2015, seeking agricultural jobs. Id. at ¶ 55. PRDOL provided the Plaintiffs with information about the employment opportunity with Manzana and the terms and conditions contained in its clearance order. Id. at ¶ 56. Williams, the owner of Manzana, then interviewed each of the Plaintiffs over the phone and reviewed the terms and conditions of the clearance order with them. Id. at ¶ 58.

The Plaintiffs allege that after they traveled to Michigan to work for Manzana in August 2015, their transportation costs were reimbursed by Williams. Id. at ¶¶ 68, 71, 74. Shortly after the Plaintiffs started work, however, Manzana and its agents made various derogatory comments to the Plaintiffs based on their status as Puerto Rican nationals. Id. at ¶¶ 91-96. Williams then required many of the Plaintiffs to sign "voluntary

[4]

quit" forms and transferred them to a different employer nearby, where they had to wait approximately two weeks to begin work. Id. at ¶¶ 98-109. These unexpected layoffs caused the Plaintiffs to "depend on the charity of a nearby church for food in order to survive while they waited to begin working again." Id. at ¶ 115.

While the Plaintiffs were in Michigan, they resided in housing that Rasch Farms owned and permitted Manzana and Williams to use for housing migrant workers. Id. ¶ 78. The Plaintiffs allege that the units in which they were housed were overcrowded, unsanitary, and included inadequate food preparation facilities. Id. ¶¶ 82-87.

## II. ANALYSIS

Rasch Farms argues that this Court does not have personal jurisdiction over it, as it had neither continuous nor systemic activity in Puerto Rico to provide general jurisdiction, nor sufficient minimum contacts with Puerto Rico to provide specific jurisdiction.[4] Def.'s Mot. 4-5.

### A. Standard of Law

In order to hear a dispute, this Court must have personal jurisdiction over the parties. Astro-Med, Inc. v. Nihon Kohden Am., Inc., 591 F.3d 1, 8 (1st Cir. 2009). To establish a

---

[4] This Court addresses only Rasch Farms's motion for lack of personal jurisdiction, as its motion for change of venue, ECF No. 21, becomes moot upon the lack of personal jurisdiction.

court's personal jurisdiction over a defendant, "[a] plaintiff bears the burden of proving the necessary facts." Rivera v. Atlass Ins. Grp. of Fla., Inc., 678 F. Supp. 2d 23, 27 (D.P.R. 2010) (Acosta, J.). "[A] district court may go beyond the four corners of the pleadings and consider materials presented in support of a motion to dismiss for lack of in personam jurisdiction." Goldman, Antonetti, Ferraiuoli, Axtmayer & Hertell v. Medfit Int'l, Inc., 982 F.2d 686, 690 (1st Cir. 1993). The Court must take facts alleged by the plaintiff as true and construe disputed facts in the light most favorable to the plaintiff, but will not "credit conclusory allegations or draw farfetched inferences." Ticketmaster-New York, Inc. v. Alioto, 26 F.3d 201, 203 (1st Cir. 1994). Here, personal jurisdiction must be authorized by Puerto Rico's long-arm statute and comply with the Due Process Clause of the Fourteenth Amendment. See Sawtelle v. Farrell, 70 F.3d 1381, 1387 (1st Cir. 1995).

As "Puerto Rico's long-arm statute, Rule 4.7 of the Puerto Rico Rules of Civil Procedure, has been interpreted to extend 'up to the point allowed by the Constitution,' we turn to the constitutional issue." Bracero v. New Tree Pers. Servs., Inc., 441 F. Supp. 2d 358, 361 (D.P.R. 2006) (Consuelo Cerezo, J.) (quoting Benitez-Allende v. Alcan Aluminio Do Brasil, S.A., 857 F.2d 26, 29 (1st Cir. 1988)). A district court may

court's personal jurisdiction over a defendant, "[a] plaintiff bears the burden of proving the necessary facts." Rivera v. Atlass Ins. Grp. of Fla., Inc., 678 F. Supp. 2d 23, 27 (D.P.R. 2010) (Acosta, J.). "[A] district court may go beyond the four corners of the pleadings and consider materials presented in support of a motion to dismiss for lack of in personam jurisdiction." Goldman, Antonetti, Ferraiuoli, Axtmayer & Hertell v. Medfit Int'l, Inc., 982 F.2d 686, 690 (1st Cir. 1993). The Court must take facts alleged by the plaintiff as true and construe disputed facts in the light most favorable to the plaintiff, but will not "credit conclusory allegations or draw farfetched inferences." Ticketmaster-New York, Inc. v. Alioto, 26 F.3d 201, 203 (1st Cir. 1994). Here, personal jurisdiction must be authorized by Puerto Rico's long-arm statute and comply with the Due Process Clause of the Fourteenth Amendment. See Sawtelle v. Farrell, 70 F.3d 1381, 1387 (1st Cir. 1995).

As "Puerto Rico's long-arm statute, Rule 4.7 of the Puerto Rico Rules of Civil Procedure, has been interpreted to extend 'up to the point allowed by the Constitution,' we turn to the constitutional issue." Bracero v. New Tree Pers. Servs., Inc., 441 F. Supp. 2d 358, 361 (D.P.R. 2006) (Consuelo Cerezo, J.) (quoting Benitez-Allende v. Alcan Aluminio Do Brasil, S.A., 857 F.2d 26, 29 (1st Cir. 1988)). A district court may

constitutionally exercise authority over a defendant if it has either general or specific jurisdiction. <u>Massachusetts Sch. of Law at Andover, Inc.</u> v. <u>American Bar Ass'n</u>, 142 F.3d 26, 34 (1st Cir. 1998).

General jurisdiction "exists when the litigation is not directly founded on the defendant's forum-based contacts, but the defendant has nevertheless engaged in continuous and systematic activity, unrelated to the suit, in the forum state." <u>Id.</u> (quoting <u>United Elec., Radio & Mach. Workers</u> v. <u>163 Pleasant St. Corp.</u>, 960 F.2d 1080, 1088 (1st Cir. 1992)). To establish specific jurisdiction, the Constitution requires that: "(1) plaintiffs' claims be related to the defendants' contacts, (2) defendants' contacts with the state must be purposeful, and (3) the exercise of jurisdiction must be reasonable under the circumstances." <u>Bracero</u>, 441 F. Supp. 2d at 361-362 (citing <u>Cambridge Literary Props., Ltd.</u> v. <u>W. Goebel Porzellanfabrik G.m.b.H & Co. Kg.</u>, 295 F.3d 59, 63 (1st Cir. 2002)). "An affirmative finding on each of the three elements of the test is required to support a finding of specific jurisdiction." <u>Phillips Exeter Acad.</u> v. <u>Howard Phillips Fund</u>, 196 F.3d 284, 288 (1st Cir. 1999).

### B. Specific Jurisdiction

The Plaintiffs do not argue that this Court has general jurisdiction over Rasch Farms, <u>see</u> Pls.' Opp'n 6, and indeed

they have not in any way established that Rasch Farms had "engaged in continuous and systematic activity, unrelated to the suit, in [Puerto Rico]." United Elec., 960 F.2d at 1088. Rather, the Plaintiffs argue, this Court has specific jurisdiction over Rasch Farms by virtue of Manzana's contacts as an agent of Rasch Farms and Rasch Farms's submission of its worksite and housing site data to Manzana for use in its clearance order. Pls.' Opp'n 7-10. Because the Plaintiffs have not carried their burden of demonstrating that the first prong of the test is met, however, the exercise of jurisdiction over Rasch Farms is not appropriate.

Courts in this district have held plaintiffs' claims to be sufficiently related to defendants' forum-state activities when those activities included the submission of clearance orders into the interstate clearance system and subsequent recruitment of workers from Puerto Rico, and the plaintiffs' claims concerned the recruitment process or clearance order. See Bracero, 441 F. Supp. 2d at 362; Villalobos v. North Carolina Growers Ass'n, Inc., 42 F. Supp. 2d 131, 140 (D.P.R. 1999) (Fuste, J.). Courts in other circuits have also routinely found the relatedness requirement to be satisfied, or the exercise of personal jurisdiction to be appropriate generally, in similar circumstances. See Ochoa v. J.B. Martin & Sons Farms, Inc., 287 F.3d 1182, 1188-93 (9th Cir. 2002); Gonsalez Moreno v. Milk

Train, Inc., 182 F. Supp. 2d 590, 594-95 (W.D. Tex. 2002); Astorga v. Connleaf, Inc., 962 F. Supp. 93, 95 (W.D. Tex. 1996); Moncevoir Hyppolite v. Gorday, No. 89-1843-CIV-NESBITT, 1990 WL 80684, at *3 (S.D. Fla. Mar. 22, 1990); Garcia v. Vasquez, 524 F. Supp. 40, 42 (S.D. Tex. 1981); see also Rios v. Altamont Farms, Inc., 64 N.Y.2d 792, 793-94 (1985) (holding exercise of personal jurisdiction to be in accordance with due process such that default judgment was entitled to full faith and credit); Nazario v. O.J. Thrall, Inc., No. CV 95529180, 1996 WL 285541, at *10-14 (Conn. Super. Ct. May 13, 1996) (same).

Here, it is clear that Manzana's and Williams's contacts with Puerto Rico -- specifically, their submission of the clearance order into the interstate clearance system and their telephone calls with and recruitment of the Plaintiffs -- are sufficiently related to the Plaintiffs' claims. Rasch Farms argues, however, that the Plaintiffs have failed to point to any forum-based contacts **by Rasch Farms** with which the Plaintiffs' claims may be related. Def.'s Mot. 5. The Plaintiffs in turn argue that because Manzana and Williams were agents of Rasch Farms, their contacts in Puerto Rico may be attributed to Rasch Farms. Pls.' Opp'n 8.

Indeed, if Manzana and Williams were acting as agents of Rasch Farms, then the exercise of personal jurisdiction would be appropriate. See, e.g., Ochoa, 287 F.3d at 1189 ("If [the labor

[9]

contractor] was acting as [the grower's] agent in this regard, [the labor contractor's] activities suffice to provide specific jurisdiction over [the grower]."); Villalobos, 42 F. Supp. 2d at 140. The Plaintiffs have failed to establish, however, that Manzana and Williams were agents of Rasch Farms.

Nowhere in their complaint do the Plaintiffs specifically allege an agency relationship. Their only allegations pertaining to Rasch Farms are that Rasch Farms "utilized [Manzana] as farm labor contractors" and "compensated [Manzana] to perform farm labor activities," Am. Compl. ¶¶ 35-36; provided its worksite and housing addresses to be included in the clearance order, id. at ¶ 48; paid the application fee for its housing to be licensed for occupancy, id. at ¶ 85; and owned the fields in which they worked, id. at ¶ 137. Otherwise, the Plaintiffs allege that the clearance order was submitted by Manzana, id. at ¶ 46; that Williams conducted telephone interviews with each of them, id. ¶¶ 57-59; and that they were paid by Williams or Manzana and reimbursed for transportation costs by Williams, id. at ¶¶ 68, 71, 74, 117-20. In both their complaint and affidavits, the Plaintiffs consistently refer to Manzana, and not Rasch Farms, as their employer. See id. at ¶¶ 15, 28, 56, 62, 65, 69, 72; Pls.' Mem. Opp'n Mot. Dismiss, Ex. A ("Pls.' Ex. A") 1-26, ECF No. 26-1; Pls.' Mem. Opp'n Mot. Dismiss, Ex. F ("Pls.' Ex. F") 1-26, ECF No. 26-6. In fact, the

Plaintiffs' affidavits do not even appear to make mention of Rasch Farms, much less assert that it was involved in their employment or had any association with Manzana or Williams. <u>See generally</u> Pls.' Ex. A; Pls.' Ex. F.

Nor do the Plaintiffs offer any other evidence showing the existence of an agency relationship or any level of involvement by Rasch Farms with their employment by Manzana. The only evidence they offer to supplement their allegations consists of the Clearance Order itself, which includes two letters of commitment from Rasch Farms. Pls.' Opp'n 2; Pls.' Mem. Opp'n Mot. Dismiss, Ex. B ("Pls.' Ex. B") 1-26, ECF No. 26-2; Pls.' Mem. Opp'n Mot. Dismiss, Ex. C ("Pls.' Ex. C") 1-26, ECF No. 26-3. In these letters, Rasch Farms verifies that it "commits to using the services of Manzana, LLC" to fulfill its need of "approximately 25 workers for orchard maintenance and apple harvesting," Pls.' Ex. B, and that it has rented "labor housing for H2A workers in 2015" to Manzana, Pls.' Ex. C. The Plaintiffs also provide no evidence that they did in fact work in fields owned by Rasch Farms.

Rasch Farms argues that the Plaintiffs are confusing its contract with Manzana for the performance of apple orchard maintenance and harvesting services with an agency relationship for the recruitment of workers to be employed by Rasch Farms. Def.'s Reply Mem. Supp. Mot. Dismiss ("Def.'s Reply") 2, ECF No.

28-1. The Clearance Order itself supports this contention, as it shows that Manzana was recruiting workers for its own employment in order to fulfill not just one contract with Rasch Farms, but numerous contracts it had with various farms in Michigan. Def.'s Reply 3-4; Am. Compl., Ex. 1 ("Clearance Order"). In fact, according to the Clearance Order and letters of commitment submitted by the Plaintiffs, Rasch Farms's needs accounted for only 25 of the 235 workers that Manzana requested for employment. See Clearance Order 1; Pls.' Ex. B. Rasch Farms further provides the Court with an affidavit from Williams asserting that Manzana was hired "on an independent contractor basis" and is the "sole employer" of its workers and has sole control over their payment, hiring, and firing. Def.'s Reply, Ex. 1 at ¶¶ 3-4. The affidavit also states that Rasch Farms provided letters of commitment for the sole purpose of allowing Manzana, in accordance with state requirements, to prove that it had sufficient contracts and housing for the requested workers. Id. at ¶¶ 6-7, 11; Def.'s Reply 3 n.11. Finally, Williams avers that none of the Plaintiffs was actually ever assigned to work on, or did work on, Rasch Farms. Def.'s Reply, Ex. 1 at ¶ 14.

The cases to which the Plaintiffs cite are distinguishable in that personal jurisdiction was established in circumstances more compelling than these. In several cases relied on by the Plaintiffs, there was no agent; rather, the grower defendants

[12]

themselves submitted clearance orders into the interstate system. See Bracero, 441 F. Supp. 2d at 362; Neizil v. Williams, 543 F. Supp. 899, 903 (M.D. Fla. 1982); Garcia, 524 F. Supp. at 42; Rios, 64 N.Y.2d at 792. In others, an agency relationship (or other relationship giving rise to personal jurisdiction) was established where the grower defendant became the workers' ultimate employer or was otherwise directly involved in the recruiting and hiring process. See Ochoa, 287 F.3d at 1186-87 (describing how grower set plaintiffs' wage rate, covered transportation expenses, and paid wages to plaintiffs through agent); Moreno, 182 F. Supp. 2d at 592 (stating that "[the grower] recruited and hired Plaintiffs, through [the labor contractor], to work for [the grower]"); Astorga, 962 F. Supp. at 94 (noting that the grower "worked closely with [the labor contractor] by providing him with literature" for employee recruitment, provided the employment contracts ultimately signed by the plaintiffs, and helped pay for the reimbursement of plaintiffs' travel expenses). Indeed, in Sarmiento v. Producer's Gin of Waterproof, Inc., 439 F. Supp. 2d 725 (S.D. Tex. 2006), where the plaintiff "merely allege[d] that [the labor contractor] acted as Defendants' recruiting agent" and "failed to provide any evidence, including his own affidavit testimony, to support his claim," the court distinguished Astorga and Moreno because in those cases,

[13]

"personal jurisdiction was based on evidence of an established principal-agent relationship." Id. at 730. Ultimately, "[m]indful that [the plaintiff's] uncontroverted allegations must be accepted as true," the court found that the plaintiff had established a prima facie case of minimum contacts because the defendants had "wholly failed to controvert the alleged association between themselves and the recruiting agent." Id. Finally, in Villalobos, a grower's association that submitted clearance order on behalf of in-state growers was found to have acted as the growers' agent. 42 F. Supp. 2d at 140. In that case, however, agency did not appear to be disputed, and the court repeatedly spoke of the "defendants" having submitted "clearance orders" through the association, rather than referring to **one** clearance order submitted by **one** defendant, the association. Id.

In light of the meager allegations and evidence provided by the Plaintiffs, as well as the countervailing evidence provided by Rasch Farms, the Court cannot credit the Plaintiffs' conclusory assertion that Manzana and Williams were acting as Rasch Farms's agents. The mere provision of an address, or letter of commitment, to be included in a clearance order containing myriad other addresses (and, presumably, letters of commitment) does not suffice to subject Rasch Farms to this Court's personal jurisdiction. Cf. Aviles v. Kunkel, 978 F.2d

201, 205 (5th Cir. 1992) (reversing exercise of personal jurisdiction over out-of-state farm owners whose only forum contact was "one telephone call and one letter which merely advised plaintiffs of the start date" of employment they had previously accepted in the farm owners' home state).

III. **CONCLUSION**

For the foregoing reasons, this Court GRANTS Rasch Farms's motion to dismiss for lack of personal jurisdiction, see ECF No. 22.

**SO ORDERED.**

/s/ William G. Young
WILLIAM G. YOUNG
DISTRICT JUDGE